Butler *vs.* Miller.

Pet. Eq.

APPEAL FROM GARRARD CIRCUIT.

Case 15.

1. The act of 1820; (1 *Stat. Law,* 449,) which declares invalid any sales of real or personal estate thereafter made by trustee, under a deed of trust, to be void unless the maker of such deed should join in the deed or writing evidencing such sale or transfer, does not apply to cases where the maker of the deed of trust has no interest in the property conveyed by the deed of trust, or in the execution of the trust.

2. The consent of the grantor is not necessary to the sale of trust property, where he has conveyed the estate absolutely, and has no further interest in it nor the sale of it. (6 *Dana,* 475; 3 *J. J. Marshall,* 236; 5 *B. Monroe,* 164.)

3. Where land was conveyed to a vendee through mistake, the fact that the vendor had no title to it constitutes no ground for a rescission of the contract.

4. Where the vendee accepts a deed and possession and has not been disturbed in his possession, and there has been no fraud, there can be no rescission of the contract at his instance.

In April, 1849, the appellants, Butler and Timberlake, sold to the appellee, Miller, a tract of land situated in the counties of Jessamine and Garrard, claimed and held by them under a deed of trust executed by one Fitch and wife, and one Johnson, for the purpose of satisfying debts against Fitch, named in the deed of trust. The price to be paid by Miller was $5,000, one-third payable in October, 1849, and the remainder in two equal annual payments.

Miller, in October, 1849, paid the one-third of the price, and executed two notes for the remainder, in equal installments, and Butler and Timberlake, with a majority of the beneficiaries in the deed of trust, united in a conveyance of the land, which was accepted by Miller, and recorded in the proper office, and he took the possession of the land, and has had the uninterrupted possession ever since. He paid one of the notes, except some sixty or seventy dollars, and paid $800 on the other. Suits were instituted on these notes, and at the November term of the

Case stated.

Garrard Court, 1852, Miller filed an answer and counter-claim, resisting the recovery upon these notes on three grounds: 1. That Butler and Timberlake had, at and before the sale of the land to him, represented that they were invested with a good and valid title to the land, and could convey such title, when in fact they had not and could not convey a good title. 2. That as to a part of the land conveyed, they had not at the date of the conveyance even a colorable title, and that it was in the adverse possession of another or others, and that such so adversely held was a main inducement to the purchase. 3. That a two acre lot on which was a steam mill and dwelling-house was included in the deed to him, and that the vendors had no title thereto, which fact was fraudulently concealed from him at the time of his purchase and conveyance. He asked that the suit be transferred to the equity docket, and prayed for a final decree cancelling the contract.

Butler and Timberlake replied to the answer and counter-claim, denying the fraudulent representation and concealment charged, denied that they ever investigated Fitch's claim, under which they held, or had any knowledge of its validity. They exhibit the executory contract and deed of Fitch and wife to them, and allege a possession under that title for more than thirty years. They allege, also, that the two-acre lot, with the mill on it, was not sold, nor intended to be conveyed, but was included in the deed by the mistake of the draftsman.

The Circuit Court decreed a rescission of the contract, and Butler and Timberlake have appealed to this court.

*Geo. S. Shanklin,* for appellants—

1. There is no proof in the record to show that any part of the land sold and conveyed was adversely claimed or held at or since the sale.

2. As to the two-acre lot, mill, &c., the proof is clear and satisfactory that it was not embraced by

the contract of sale, and was conveyed through mistake. That it had belonged to another individual, who was in possession of it, and the fact clearly within the knowledge of Miller long before his purchase. There is no plausible ground made out for a rescission of the contract. All that the vendors undertook to convey was the title derived from Fitch and wife and Johnson. They did not agree to warrant the title, nor do they do so by the deed which was accepted.

There is no fraud, concealment, or misrepresentation proved, and it is well settled, by repeated adjudications of this court, that when the vendee has accepted a deed, been let into possession, and has not been disturbed in that possession, that the vendee cannot withhold the purchase money, or ask a rescission of the contract. (*Breckenridge vs. Hoke*, 4 *Bibb*, 273 ; *Miller vs. Long*, 3 *Marshall*, 334 ; 1 *J. J. Marshall*, 481, 483 ; 3 *Ib*. 583, 701 ; 5 *Monroe*, 154.) The same doctrine has been adhered to in many more recent decisions.

A reversal is asked.

*M. C. Johnson*, on the same side—

The grounds upon which the Circuit Court decreed the rescission of the contract are believed to be, 1. That under the statute of 1820 the trustees could not convey without Fitch uniting in the conveyance. 2. That the steam mill lot was in adverse possession at the time of the sale, and the appellants had no title to it. 3. That the deed of Moss was a conveyance to Fitch and Hammit, and no conveyance was exhibited from Hammit. There may be other defects in the title, but it is not considered necessary to dwell upon them as they are small, and the conveyance to Hammit, in conjunction with Fitch, is a defect in the legal title which the record does not clear up. If, therefore, it is decided by this court that the appellants are bound to exhibit a clear legal title, they must fail.

1. The power of Butler and Timberlake to convey under the act of 1820, without the grantor, Fitch, uniting in the conveyance. No decision of this court is recollected directly deciding the construction of the second section of the act of 1820; but there are cases in which it has been directly construed; and its provisions confined to "deeds of trust or pledge in the nature of mortgages." The object of the statute, its provisions, its language, all confine it to deeds of trust securing the payment of debts. It was passed as a part of the relief system to prevent the collection of debts by sales under powers inserted in deeds of trust. It required, to make the sale valid, that the grantor should unite in the sale, or the sale to be ordered by a court of equity. This provision was evidently to protect the equity of redemption or resulting trust in the grantor from sacrifice by a forced sale by the trustee. Where the grantor has no interest, legal or equitable, as, for instance, in a conveyance to trustees for the use of a married woman, there could be no object or purpose for requiring the grantor, who conveyed the property, to unite in the sale and conveyance. And there are a number of cases in which this court has decided that a conveyance by the trustee, in which the married woman and her husband united, passed a complete title, without its being supposed or intimated that this statute required the grantor to unite in the sale or conveyance. The word "*pledge*," used in the statute in connection with "*trust*," conduced to the interpretation that the act was confined to deeds of trust or pledges for the payment of debts.

In the Revised Statutes this expression is expressly confined to deeds of trust for the payment of debts.

2. The adverse possession of the lot and saw mill, owned and held by or under George Brown, is relied upon. There is no doubt about the adverse possession of this lot; but it is equally free of doubt that this lot was never sold to Miller, or believed by him to have been embraced in the purchase. The mere

reading of the contract of the 5th of April, 1849, the deed of Fitch and Johnson, and the conveyance to Miller, will show that the lot was never sold, and that the failure to except it out of the deed to Miller was a mere clerical error of the draftsmen of the deed.

3. As to the outstanding title in Hammit. There is no doubt that the record does not clear up this defect of title. There is but little, I may say, indeed, no doubt that defect is merely ostensible. The deed was made nearly twenty years ago, in June, 1836. Hammit is no where spoken of as having possession of any kind. Moss proves that Fitch bought the property and paid for it. It is evident that Fitch and Hammit contemplated (or formed) a partnership for the purpose of founding the town of Fitchport, but it is equally evident that Hammit early retired from the concern, and that Fitch completed the purchase by paying for it, and has held and claimed it ever since, and finally sold it as his sole property.

The real question presented in this case is, has the appellee any right to require the appellants to show any other title than that which they covenanted to convey? There can be no pretense that the appellants in any manner deceived the appellee. They did not pretend to have examined the title. They supposed it was good because they had never heard it disputed, and Fitch had long been in the possession and ostensible ownership of it; but they told him distinctly, they put it in the contract, they put it in the deed, that all they would undertake to convey was the title they received under the deed from Fitch and wife and Johnson. They had the strongest motive for making such a contract. They were mere trustees, and the money they would receive would be at once distributed among a great many persons, some of whom were insolvent; and if any liability were afterwards to accrue, they would be placed in a position of liability to a great loss.

By the decree of rescission which has been rendered, they will suffer great loss. The place is of

much less value than it was when they sold it. The title has been depreciated in public estimation, and they are decreed to refund money which they have long since distributed. Can trustees guard themselves against such a liability? Have not these trustees so guarded themselves in their contract and conveyance? If they have not, in what manner, and by what language or provision can trustees guard themselves? It is the business of courts to construe and carry into effect the contracts of parties, and especially those salutary provisions which, persons standing in a mere fiducial position, and deriving no individual benefit from their acts, have made simply for their protection. This is not a case where the trustees undertook that there was a good title, or even a legal title. It is not like the case of a special warranty, where the construction is that the vendor undertakes that he has a regular title, though not the best title. This is nothing more than selling the title they held—the contract showing what title they assumed to have, which was simply the title they derived from Fitch and Johnson. In addition, Miller has accepted the deed. There was an interval of several months between the contract and the conveyance, during which he had full opportunity of examining the title. He accepts the title. When he filed his counter-claim for a rescission, he had never been interrupted in his possession; his title had never been disputed, and although he recklessly charges fraud and falsehood in the appellants, he fails to sustain the charges. He does not point out one defect in title which he sustains. The defects which do appear in the title have been hunted up during the progress of the suit, and are not pointed out in any of the pleadings in the case. It is evident the defense commenced for mere delay, and with some hope of getting clear of a contract which has not proved to be as profitable as was anticipated.

We ask a reversal.

*S. Turner and A. A. Burton,* for appellee—

It is contended by the appellants, on the authority of the case of *Miller vs. Long,* 3 *Mar.* 344, &c., that inasmuch as Miller has received a conveyance, and gone into possession, he is precluded from rescinding the contract, and must await an actual eviction, and then look to the warranty in his deed. This is certainly true in all cases where the deed contains a clause of general warranty, and is so executed and recorded as to pass the title, and the warrantor is a resident of the State, and the title merely defective, and there has been no fraud or mistake. But the case presented by this record is a very different one. Here the title conveyed is not merely defective, but there is no title. The greater portion of the land in Garrard is not covered by any patent. The title to both tracts, if ever in the heirs of Wm. Hogan, is still in them. The deed made purporting to convey their title to Moss under the proceedings in the County Court of Jessamine, being void, not being made in conformity with the statute, and the court having no jurisdiction over the land in Garrard.

The title of one undivided half of both tracts is still in Hammit, he, with Fitch, having received a conveyance for it within less than twenty years. The deeds to Moss, Fitch, Johnson, and Butler and Timberlake, have not been recorded in Garrard, where the greater part of the land lies; and the deed to Miller has not been so executed by a majority of the creditors as to entitle it to record, and was not deposited for record for near twenty years after it is said to have been acknowledged. And, above all, Butler and Timberlake had no power to make the sale or conveyance, unless Fitch had "joined in the deed or writing evidencing the sale and conveyance." (1 *Stat. Laws,* 449.) The greatest effect that can be claimed for the act of the trustees, is that those acts created an equity in behalf of Miller, which he might, at his election, enforce against the trustees—for he could not compel a conveyance—and which would be liter-

BUTLER
vs.
MILLER.

ally worthless without the title, which still remains in Fitch.

Further, it will be seen that in all the cases since that of Miller and Long, the vendee was denied the right of rescission, on the ground that he had accepted a deed with *general warranty*. In this case there is no *general warranty*, indeed no *warranty* at all. The trustees conveyed "all the title conveyed to them by Fitch and Johnson." The only right conveyed to the trustees was the right to sell the property in conjunction with Fitch, or to appeal to a Court of Chancery to compel a sale. This is not a legal right or title, but a mere equity, which is not the subject of a general warranty in the legal sense of that term.

The doctrine for which we contend is sustained by a number of decisions of this court, two of which we refer to without further extending the argument. In the case of *Hyne's rep's vs. Campbell*, 6 *Monroe*, 290, this court used this language : "As the complainants," the vendees who had "accepted title" and possession in that case, "cannot therefore be compelled to accept the conveyance as tendered, and there was a mistake in the contract, and that a great one, as to where the title really resided at the time, it will follow from the principles which govern courts of equity that they are entitled to a rescission of the contract; especially as they have no warranty, but were induced to take the supposed title and rely on it alone. If they had a warranty they might be compelled to rely thereon until an eviction happened." In *Bowlin and wife vs. Pollock*, 7 *Monroe*, 34, this court said, in a case where the vendee had the possession and had accepted title : "If he had gotten a *defective* title by the contract, we admit that cases are not wanting to show that he ought to rely on his warranty ; but as he has not gotten even a color or shadow of claim, he ought not to be compelled to rely on his warranty."

We ask an affirmance.

Judge SIMPSON delivered the opinion of the Court—

The contract between the parties having been executed on the part of Butler and Timberlake, and the deed accepted by Miller, it devolves upon him to allege and prove such matters as he relies upon to entitle him to a rescission of the contract.

He does not allege that the deed of conveyance made to him is defective, because a majority in amount of interest of the creditors mentioned in the deed of trust did not sanction and approve of it in the manner required by that deed; and consequently this matter was not in issue between the parties, nor can any objection be now made to the title on this ground. The vendors were not seeking a specific execution of the contract, and therefore they were not bound to demonstrate the goodness and sufficiency of their title to the land. The purchaser was seeking a rescission of the contract, and it was incumbent on him to establish the grounds on which he based his right to demand a rescission of it.

The act of 1820, (1 *Stat. Laws*, 449,) which renders invalid any sales of real or personal estate, thereafter made by a trustee, under and by virtue of a deed of trust, unless the maker of such deed should join in the deed or writing evidencing the sale or transfer, was passed for the benefit of the grantor in such deeds, and to secure his interest in the property from being sacrificed, unless the sale was made with his consent. This statute should not be applied to cases where the maker of the deed, by which the trust is created, has no interest either in the property conveyed or in the execution of the trust. His consent to a sale of the trust property should not be deemed necessary in such cases, because having conveyed the estate absolutely, he has no further right in it to convey, nor any interest in the sale of it, inasmuch as he cannot be prejudiced by any disposition that may be made of it. It has been held that the statute does not embrace all deeds of trust, (6 *Dana*, 475; 3 *J. J. Marshall*, 236, 5 *B. Monroe*, 164,) and as it is obvious that it was de-

VOL. XV—40

BUTLER
*vs.*
MILLER.

June 20.

A vendee seeking rescission of a contract must show a right to a rescission.

1. The act of 1820, (1 *Statute Law*, 449,) which declares invalid any sales of real or personal estate thereafter made by trustee, under a deed of trust, to be void unless the maker of such deed should join in the deed or writing evidencing such sale or transfer, does not apply to cases where the maker of the deed of trust has no interest in the property conveyed by the deed of trust, or in the execution of the trust.

Butler
*vs.*
Miller.

signed for the protection of the interest of the maker of the deed in the property conveyed in trust, it should not be considered as having any application in a case like the present, where no such interest exists. The deed of trust executed by Fitch, shows that he conveyed the property absolutely to the trustees, to be held by them for the purposes mentioned, and that he had no further interest in the property nor in the execution of the trust. We are of opinion, therefore, that it was not necessary for him to join in the deed of conveyance executed to the purchaser by the trustees.

2. The consent of a grantor is not necessary to the sale of trust property, where he has conveyed the estate absolutely, and has no further interest in it nor the sale of it. (6 *Dana,* 475; 3 *J. J. Mashall,* 236; 5 *B. Monroe,*164.)

The written agreement between the parties states expressly that the property agreed to be sold was the same that was conveyed to the trustees by Fitch and Johnson, and that deed excludes out of the boundary conveyed, the mill property, consisting of two acres in Jessamine county, which, as therein stated, had been sold under a decree, and was not included in the conveyance, but was reserved therefrom. It thus appears beyond doubt that this mill property was not purchased by Miller, and that it did not constitute any part of the consideration for the payment of the stipulated price of five thousand dollars. It must therefore have been conveyed to him by mistake. This conclusion is fortified by his subsequent conduct in reference to this part of the property, and by all the facts and circumstances in the case. Having been included in his deed by mistake, and not being any part of the property actually purchased by him, the fact that his vendors had no title to it, does not furnish him with any equity whatever, to have the contract between them rescinded.

3. Where land was conveyed to a vendee through mistake, the fact that the vendor had no title to it constitutes no ground for a re-

Miller does, however, allege in general terms that the plaintiffs had no valid title to the land sold him, and that to a portion of it they had no valid or colorable title whatever. It appears in testimony that the title is in some respects defective ; although Fitch and those under whom he claimed had been in the possession of it for many years, claiming it as their

own, and the defendant has been in the undisturbed possession of the whole of the property actually purchased by him, ever since he obtained the posession of it under his contract.

The charge of fraud against the vendors is wholly unsupported. They deny having made any representations to the purchaser about the title, or to have stated to him that the title was good, although they admit they may have said that in their opinion it was good. It does not appear that they said or did anything to induce the purchaser to believe they had any knowledge of the goodness of the title. The very terms upon which they proposed to sell should have put him on his guard, and induced him to have investigated the title for himself. They only agreed to convey the title which had been vested in them without any covenant of warranty, and without any responsibility upon themselves whatever. He purchased from them upon these terms, and after having had time to examine the title he accepted a deed from them in fulfilment of the contract upon their part. If they acted fairly, and made no misrepresentations to him in relation to the title, upon what ground can the contract be rescinded? There is not a particle of evidence tending to show any unfairness in their conduct, any fraud in the procurement of the contract or any misrepresentations of any fact relating to the title to the property. The fact that the deed does not contain a covenant of warranty, cannot operate in his favor. It proves that he did not only rely upon his vendors, but was willing to purchase the property and risk the title. Purchasers have a right to make such risking contracts, and when made can only be relieved from them upon the ground of fraud in their procurement. The same principle was recognized and applied in the case of *Newport Odd Fellows vs. Johnson*, decided at the last term of this court. The defect in the title does not therefore authorize a rescission of the contract.

BUTLER
vs.
MILLER.

scission of the contract.

4. Where the vendee accepts a deed and possession and has not been disturbed in his possession, and there has been no fraud, there can be no rescission of the contract at his instance.

Wherefore, the judgment is reversed and cause remanded that a judgment may be rendered against the defendant, on the note upon which the plaintiff's action is founded.